UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO CERRA, MIGUEL AUDELO, MAURIZIO DE ROSA, RAUL DOMINGUEZ, FRAY PRIEGO, and PEDRO PINEDA, Individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SISTINA RESTAURANT, INC., and GIUSEPPE BRUNO, Jointly and Severally,<br><br>Defendants. | ECF CASE<br><br>No.:<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Antonio Cerra, Miguel Audelo, Maurizio de Rosa, Raul Dominguez, Fray Priego, and Pedro Pineda, individually and on behalf of all other persons similarly situated, allege through their attorneys, Lipsky Lowe LLP, as against Defendants Sistina Restaurant, Inc. and Giuseppe Bruno, Jointly and Severally, as follows:

## NATURE OF THE ACTION

1. Plaintiffs allege, on their behalf and on behalf of all other similarly situated current and former employees of Defendants who elect to opt into this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that Defendants willfully violated the FLSA by: (i) unlawfully retaining gratuities; and (ii) failing to pay overtime premiums.

2. Plaintiffs allege, on their behalf and on behalf of all other similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. P. 23 (a) and (b), that Defendants willfully violated the New York Labor Law ("Labor Law") by: (i) failing to pay the minimum wage; (ii) failing to pay overtime premiums; (iii) failing to pay spread-of-hours pay, (iv) failing to timely pay wages; (v) unlawfully retaining gratuities; (vi) failing to provide the Notice and

Acknowledgement of Payrate and Payday under Labor Law § 195.1; and (vii) failing to provide an accurate wage statement under Labor Law § 195.3 with every wage payment.

3. Plaintiff Dominguez alleges on behalf of himself that Defendants terminated his employment in retaliation for his protected complaints about his wages in violation of Labor Law § 215.

JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' FLSA claims under 29 U.S.C. § 216(b).

5. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2).

6. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

THE PARTIES

7. Plaintiff Cerra was, at all relevant times, an adult individual residing in Nassau County, New York.

8. Plaintiff Audelo was, at all relevant times, an adult individual residing in New York County, New York.

9. Plaintiff de Rosa was, at all relevant times, an adult individual residing in New York County, New York.

10. Plaintiff Dominguez was, at all relevant times, an adult individual residing in Queens County, New York.

11. Plaintiff Priego was, at all relevant times, an adult individual residing in New York

County, New York.

12. Plaintiff Pineda was, at all relevant times, an adult individual residing in New York County, New York.

13. Upon information and belief, Defendant Sistina is a domestic business corporation that is organized under New York law and is authorized to do business in the State of New York.

14. Defendant Sistina is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Defendant Sistina is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and materials that have been produced for and moved in commerce, which its employees have handled, including liquor, food, glassware, computers and beverages.

15. Defendant Bruno, upon information and belief, owns, operates and controls Defendant Sistina's day-to-day operations and management and jointly employed Plaintiff and other similarly situated employees at all relevant times.

16. Defendants, either directly or indirectly, hired Plaintiffs and other employees, fired employees, controlled employees' work schedules and employment conditions, determined their payment rate and method, and kept at least some records regarding their employment.

17. At any given time, Defendants have had more than 11 employees.

18. Defendants constitute "employers" under all applicable statutes.

## STATEMENT OF FACTS

### Overview

19. Defendant Sistina is an Italian restaurant located in Manhattan, New York.

20. Defendant Bruno is the owner of Defendant Sistina, and as such, controls its day-to-day operations and management.

21. Defendant Sistina's hours of operation are 12:00pm to 3:00pm and 5:00pm to 10:00pm, 7 days a week.

22. In the past three years, Defendants have employed approximately 50 bartenders, busboys, and food runners at any one time.

23. Defendants' bartenders, busboys, and food runners, including Plaintiffs, spend practically their entire shift doing physical labor.

24. Defendants have only occasionally permitted their bartenders, busboys, and food runners to take one short break of 15-20 minutes per day. On most days, they work without any breaks.

25. Bartenders, busboys, food runners, and others working for Defendants sometimes arrive before it opens to prepare for service and stay after it closes to clean up.

<u>Defendants' Compensation Policies</u>

26. Defendants pay their bartenders, busboys, and food runners between $9.00 and $11.00 per hour.

27. Defendants require their bartenders, busboys, and food runners to pool their tips.

28. Defendants' "glass wipers" are also part of this tip pool, even though they do not engage with the staff or customers.

29. Glass wipers work virtually their entire shifts in the back of house, in the kitchen, cleaning and stocking glassware without interacting with customers.

30. Defendants pay out the tip pool to all of the pool's members, including the glass wipers.

31. A portion of the tips earned by Defendants' bartenders, busboys, and food runners, including Plaintiffs, are paid out to the glass wipers, despite the glass wipers having fundamentally different duties, which exclude engaging with Defendants' customers.

32. Defendants do not know whether their employees' tips plus hourly rate equals them being paid at least the statutory minimum wage.

Compensation and Scheduling

33. Throughout Plaintiffs' employment, Defendants paid their bartenders, busboys, and food runners every two weeks.

34. By delaying payment to their bartenders, busboys, and food runners, including Plaintiffs, they were underpaid for the work they performed; they were deprived of money that they are owed and need; the value of the money, when eventually paid, is less than it would have been if they were timely paid; and they were not able to purchase everything they would have purchased if timely paid.

35. When Defendants' bartenders, busboys, and food runners arrive before their scheduled shift to begin setting up for service, Defendants do not pay them for that time. This includes time organizing the bar, cleaning up the bar, cutting up garnishes, setting up the seating, stocking the bar and organizing the coat check room.

36. When Defendants' bartenders, busboys, and food runners stay after their scheduled shift to close down the bar, Defendants do not pay them for that time. This includes time organizing the bar, cleaning up, breaking down the seating, and stocking the bar.

37. Defendants are aware that their bartenders, busboys, and food runners are working before and after their scheduled shift because i) they clock in when they arrive and start working and clock out when they stop working, versus clocking in and out based on their scheduled shift,

ii) they could not have performed their jobs without completing these pre-and post-shift activities, iii) they have complained about not being paid for all hours worked, and iv) a manager regularly sees them working before and after their scheduled shifts.

38. Many of Defendants' bartenders, busboys, and food runners regularly work over 40 hours in a week.

39. Defendants have had a policy of not paying their bartenders, busboys, and food runners overtime premiums of 1.5 times their regularly rate of pay for hours they work over 40 in a week.

40. When Defendants' bartenders, busboys, and food runners work 10 hours or more in a day, Defendants do not pay them an extra hour at the minimum wage.

41. As a result of these practices, Defendants regularly do not pay their bartenders, busboys, and food runners for compensable time.

42. Defendants' bartenders, busboys, and food runners' paystubs do not correctly reflect all of the hours that they worked as a consequence of Defendants altering their time records.

43. Defendants do not provide Plaintiffs or the other bartenders, busboys, and food runners with an accurate wage statement under Labor Law § 195.3 with every wage payment.

44. When hiring them and at no point during their employment has Defendants provided their bartenders, busboys, and food runners the required Notice and Acknowledgment of Payrate and Payday under Labor Law § 195.1.

45. Defendants' failure to provide their bartenders, busboys, and food runners with the Labor Law § 195.1 notice and accurate wage statements deprived them of the information necessary to review their wages and hours worked and was a direct cause for their economic injury and, in fact, resulted in their wages being underpaid.

46. If Defendants had complied with the Labor Law §§ 195.1 and 195.3 notices and wage statements, their bartenders, busboys, and food runners would have been able to see that they were not being lawfully paid and would have been able to avoid underpayment of their wages.

Duties of Defendants' Bartenders, Busboys, and Food Runners

47. Defendants' bartenders are responsible for setting up for their shift, serving customers, cutting up garnishes, setting up the outdoor seating, organizing the bar by moving bottles around to their appropriate location, cleaning their bar during their shift and closing up their bar after their shift.

48. Defendants' busboys are responsible for cleaning tables upon customers leaving, restocking supplies, assisting guests with their questions, and supporting the kitchen staff.

49. Defendants' food runners are responsible for delivering food from the kitchen to the tables, ensuring order accuracy with the kitchen staff and customers, and setting the tables for customers are seated.

50. Defendants' bartenders, busboys, and food runners regularly engage with customers.

51. Defendants' bartenders, busboys, and food runners spend virtually their entire shifts performing physical labor.

**Plaintiff Cerra**

52. Defendants employed Plaintiff Cerra as a dining room server (Captain) from October 2023 to September 2025.

53. Plaintiff Cerra, in performing his duties, spent practically his entire shift doing physical labor.

Hours Worked

54. Plaintiff Cerra's regular work schedule was six days a week, equaling about 50 hours: Monday and Tuesday from 4:00pm to 11:00pm (7 hours each day); Wednesday off; Thursday and Friday from 4:00 p.m. to close (8 hours each day); and Saturday and Sunday from 10:30am to 4:30pm and 6:00pm to 10:00pm (10 hours each day).

Compensation

55. Defendants paid Plaintiff Cerra $10.00 and later $11.00 per hour, plus a share of some but not all the tips he was owed.

56. Defendants paid Plaintiff Cerra every two weeks.

57. Defendants never provided Plaintiff Cerra with an accurate Notice and Acknowledgement of Payrate and Payday under Labor Law § 195.1.

58. Defendants did not provide Plaintiff Cerra with an accurate wage statement under Labor Law § 195.3 with every wage payment.

59. Plaintiff Cerra has worked more than 10 hours in a day multiple days per week.

60. When he worked more than 10 hours in a day, Defendants did not pay Plaintiff Cerra an extra hour at the minimum wage.

61. Plaintiff Cerra's gratuities were withheld from him because Defendants pooled his gratuities Defendants with glass wipers who did not engage with staff or customers but still received a portion of the tip pool.

62. From speaking with them, Plaintiff Cerra knows that other bartenders, servers, and busboys were, like him, not paid all of their hours worked, were paid below the statutory minimum wage, were not given the required Labor Law notices, and had to contribute their tips to a tip pool with glass wipers who did not engage with staff or customers.

**<u>Plaintiff Audelo</u>**

63. Defendants have employed Plaintiff Audelo as a food runner from May 2022 to the present.

64. Plaintiff Audelo, in performing his duties, spent practically his entire shift doing physical labor.

Hours Worked

65. Plaintiff Audelo's regular work schedule was five days a week, from Friday to Tuesday, and more recently from Sunday to Thursday, equaling about 42 hours: three days of a double shift amounting to 10 hours each day, and two days of a single shift amounting to 6 hours a day.

Compensation

66. Defendants paid Plaintiff Audelo $10.00 per hour, plus a share of some but not all the tips he was owed.

67. Defendants paid Plaintiff Audelo every two weeks.

68. Defendants never provided Plaintiff Audelo with an accurate Notice and Acknowledgement of Payrate and Payday under Labor Law § 195.1.

69. Defendants did not provide Plaintiff Audelo with an accurate wage statement under Labor Law § 195.3 with every wage payment.

70. Plaintiff Audelo's gratuities were withheld from him because Defendants pooled his gratuities Defendants with glass wipers who did not engage with staff or customers but still received a portion of the tip pool.

**Plaintiff de Rosa**

71. Defendants have employed Plaintiff de Rosa as a Sommelier from October 2024 to the present.

72. Plaintiff de Rosa, in performing his duties, spent practically his entire shift doing physical labor.

Hours Worked

73. Plaintiff de Rosa's regular work schedule was six days a week, about 11 hours per day, equaling about 66 hours per week.

Compensation

74. Defendants paid Plaintiff de Rosa a salary of $1,895.00 net pay per week, but never overtime premiums or spread of hour pay.

75. Defendants paid Plaintiff de Rosa every two weeks.

76. Defendants never provided Plaintiff de Rosa with an accurate Notice and Acknowledgement of Payrate and Payday under Labor Law § 195.1.

77. Defendants did not provide Plaintiff de Rosa with an accurate wage statement under Labor Law § 195.3 with every wage payment.

78. Plaintiff de Rosa's gratuities were withheld from him because Defendants pooled his gratuities Defendants with glass wipers who did not engage with staff or customers but still received a portion of the tip pool

**Plaintiff Dominguez**

79. Defendants employed Plaintiff Dominguez as a food runner from September 2022 to September 2023, and from September 2024 to November 2025, when he was fired in retaliation for his wage related complaints.

80. Plaintiff Dominguez, in performing his duties, spent practically his entire shift doing physical labor.

Hours Worked

81. Plaintiff Dominguez's regular work schedule was five days a week, for about seven hours a day, and about 35 hours a week.

Compensation

82. Defendants paid Plaintiff Dominguez $10.00 per hour, plus a share of some but not all the tips he was owed.

83. Defendants paid Plaintiff Dominguez every two weeks.

84. Defendants never provided Plaintiff Dominguez with an accurate Notice and Acknowledgement of Payrate and Payday under Labor Law § 195.1.

85. Defendants did not provide Plaintiff Dominguez with an accurate wage statement under Labor Law § 195.3 with every wage payment.

86. Plaintiff Dominguez's gratuities were withheld from him because Defendants pooled his gratuities Defendants with glass wipers who did not engage with staff or customers but still received a portion of the tip pool.

Retaliation

87. Throughout his employment, Plaintiff Dominguez complained to Defendants about the lack of pay or his pay checks bouncing, most recently in October 2025.

88. In response, Defendant would deflect the issue and say he would be paid soon or yell and curse at him until he gave up.

89. In November 2025, a co-worker called Plaintiff Dominguez to tell him that boss directed him to inform Plaintiff Dominguez that he was fired, saying, "there is no more work for

you."

90. Plaintiff Dominguez spoke to boss about the reason for his firing. Boss told him chefs had some unidentified issue with the front of house workers and demanded he fire them or the chefs.

91. But this rationale is pretext because Plaintiff Dominguez never had an issue with the chefs.

92. Plaintiff Dominguez asked for his final paycheck, but boss started yelling and cursing at him, which he normally did to all employees with a complaint, until Plaintiff Dominguez gave up and left the restaurant.

93. Defendant has refused to pay Plaintiff Dominguez his final paycheck.

**Plaintiff Priego**

94. Defendants has employed Plaintiff Priego as a busboy from December 2021 to the present.

95. Plaintiff Priego, in performing his duties, spent practically his entire shift doing physical labor.

Hours Worked

96. Plaintiff Priego's regular work schedule was six days a week, for 8-10 hours a day, and about 54 hours a week.

Compensation

97. Defendants paid Plaintiff Priego $10.00 per hour at first, then $11.00 through the present, plus a share of some but not all the tips he was owed.

98. Defendants paid Plaintiff Priego every two weeks.

99. Defendants never provided Plaintiff Priego with an accurate Notice and

Acknowledgement of Payrate and Payday under Labor Law § 195.1.

100. Defendants did not provide Plaintiff Priego with an accurate wage statement under Labor Law § 195.3 with every wage payment.

101. On some occasions, Plaintiff Priego has worked more than 10 hours in a day.

102. When he worked more than 10 hours in a day, Defendants did not pay Plaintiff Priego an extra hour at the minimum wage.

103. Plaintiff Priego's gratuities were withheld from him because Defendants pooled his gratuities Defendants with glass wipers who did not engage with staff or customers but still received a portion of the tip pool.

**Plaintiff Pineda**

104. Defendants have employed Plaintiff Pineda as a busboy from September 23, 2020 to the present.

105. Plaintiff Pineda, in performing his duties, spent practically his entire shift doing physical labor.

Hours Worked

106. Plaintiff Pineda's regular work schedule was 6-7 days a week, 7-10 hours a day, and 42-70 hours a week.

Compensation

107. Defendants paid Plaintiff Pineda $10.00 per hour at first, and then $11.00 per hour from January 2025 to the present, plus a share of some but not all the tips he was owed.

108. Defendants paid Plaintiff Pineda every two weeks.

109. Defendants never provided Plaintiff Pineda with an accurate Notice and Acknowledgement of Payrate and Payday under Labor Law § 195.1.

110. Defendants did not provide Plaintiff Pineda with an accurate wage statement under Labor Law § 195.3 with every wage payment.

111. Plaintiff Pineda's gratuities were withheld from him because Defendants pooled his gratuities Defendants with glass wipers who did not engage with staff or customers but still received a portion of the tip pool.

COLLECTIVE ACTION ALLEGATIONS

112. Under the FLSA, 29 U.S.C. § 206, Plaintiffs seek to assert these allegations and claims as a collective action:

> All persons whom Defendants employ and have employed who are/were bartenders, busboys, food runners, and other comparable tipped positions with different titles at any time since December 1, 2022 to the entry of judgment in this case (the "Collective Action Members").

113. Plaintiffs and the Collective Action Members are similarly situated on several legal and factual issues, including:

a. Defendants employed the Collective Action Members within the meaning of the FLSA;

b. Collective Action Members performed similar duties;

c. Defendants willfully or recklessly violated the FLSA;

d. Defendants should be enjoined from such violations of the FLSA in the future; and

e. The statute of limitations should be estopped or equitably tolled due to Defendants' statutory violations.

CLASS ACTION ALLEGATIONS

114. Plaintiffs assert these allegations and claims on their own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Defendants employ and have employed who are/were bartenders, busboys, food runners, and other comparable tipped positions at any time since December 1, 2019 (the "Class Members").

115. The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Defendants' sole control, upon information and belief, at least 50 Class Members exist.

116. Plaintiffs' claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

117. Defendants have acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

118. Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

119. Plaintiffs have the same interest in this matter as all other Class Members and their claims are typical of Class Members'.

120. Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including:

a. Whether Defendants employed Plaintiffs and the Class Members within the meaning of the Labor Law;

b. What proof of hours worked is sufficient where employers fail in their duty to maintain time records;

c. Whether Defendants paid Plaintiffs and the Class Members for all hours worked;

d. Whether Defendants gave Plaintiffs and the Class Members proper notice of the "tip credit" as 12 N.Y.C.R.R. §§ 146-1.3 and 2.2 requires;

e. Whether Defendants failed to provide Plaintiffs and the Class Members Notice and Acknowledgement of Payrate and Payday under Labor Law § 195.1;

f. Whether Defendants failed to provide Plaintiffs and the Class Members wages statements under Labor Law § 195.3;

g. Whether Defendants failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided under the Labor Law in any area where Plaintiffs and the Class Members are employed;

h. Whether Defendants are liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

i. Whether Defendants should be enjoined from such violations of the Labor Law in the future.

## FIRST CAUSE OF ACTION
## UNLAWFUL RETENTION OF GRATIUITIES/UNLAWFUL WAGE DEDUCTIONS UNDER THE FLSA
(On Behalf of Plaintiffs and the Collective Action Members)

121. Plaintiffs reallege every preceding allegation as if set forth fully herein.

122. Plaintiffs consent, through counsel, to be parties to this action under 29 U.S.C. §216(b).

123. Defendants employed, and/or continue to employ, Plaintiffs and the Collective Action Members within the meaning of the FLSA.

124. Defendants willfully violated 29 U.S.C. § 203(m)(2)(B) by unlawfully retaining a portion of Plaintiffs' and Collective Action Members' gratuities.

125. Defendants have made unlawful deductions and required kickbacks from Plaintiffs by deducting from Plaintiffs' tips that were received from customers.

126. The deductions made from Plaintiffs' wages have not been authorized or required by law.

127. The deductions made from Plaintiffs' wages have not been expressly authorized in writing by Plaintiffs, and have not been for their benefit.

128. Through their knowing or intentional efforts to permit unauthorized deductions form Plaintiffs' wages, Defendants have willfully violated the FLSA. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35.

129. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

130. Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs and the Collective Members' compensation.

131. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled between the filing of this lawsuit and when the Court conditionally certifies the collective action.

132. Due to Defendants' violations of the FLSA, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unlawfully retained gratuities, statutory liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest and such other legal and equitable relief as this Court deems just and proper.

## SECOND CAUSE OF ACTION
## UNPAID OVERTIME UNDER THE FLSA

133. Plaintiffs reallege every preceding allegation as if set forth fully herein.

134. Defendants were required to pay Plaintiffs no less than 1.5 times the regular rate at which he was employed for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

135. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs the proper overtime compensation for their hours worked in excess of 40 hours per workweek.

136. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

137. Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

138. Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine the wages, hours, and other conditions and practices of employment, violating the FLSA, 29 U.S.C. §§ 201, 207(a)(1) and 215(a).

139. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and any other legal and equitable relief as this Court deems just and proper.

## THIRD CAUSE OF ACTION
## FAILURE TO PAY THE MINIMUM WAGE UNDER THE NEW YORK LABOR LAW
## (On Behalf of Plaintiffs and the Class Members)

140. Plaintiffs reallege every preceding allegation as if set forth fully herein.

141. Defendants are jointly an "employer" under Labor Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiffs and the Class Members.

142. At all relevant times, Defendants were subject to the Minimum Wage Order for the Hospitality Industry promulgated by the New York State Department of Labor, 12 N.Y. C.R.R. Part 146

143. The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs and the Class Members.

144. Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants was required to pay Plaintiffs and the Class Members the statutory minimum wage.

145. Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §§ 137-2.3, *et seq.*

146. Defendants paid Plaintiffs and the Class Members below the statutory minimum wage.

147. Defendants are not eligible to take a tip credit and pay Plaintiffs and the Class Action Members below the statutory minimum wage under 12 N.Y.C.R.R. §§ 137-2.1, 2.2 and 12 N.Y.C.R.R. §§ 146-2.2, 2.9 because: (i) Defendants failed to inform Plaintiffs and the Class Action Members of the Labor Law's tip credit provisions, failing to give them the required notice; (ii) Defendants failed to pay them for all hours worked in violation of the Labor Law; (iii) retained

some of their tips; and (iv) Plaintiffs and the Class Members each spent more than 20% of their shifts performing non-tipped work.

148. Defendants are accordingly liable to Plaintiffs and the Class Action Members for the difference between the hourly rate at which they paid them and the statutory minimum wage.

149. Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiffs and the Class Members the minimum wage.

150. Due to Defendants' Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

## FOURTH CAUSE OF ACTION
## FAILURE TO PAY OVERTIME PREMIUM PAY UNDER THE NEW YORK LABOR LAW

151. Plaintiffs reallege every preceding allegation as if set forth fully herein.

152. Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendants were required to pay Plaintiffs 1.5 times his regular rate of pay for all hours they worked in excess of 40 per workweek. 12 N.Y.C.R.R. § 142-2.2; Labor Law §§ 652, 650 *et seq.*

153. Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiffs the correct amount of overtime wages.

154. Due to Defendants' Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

FIFTH CAUSE OF ACTION
FAILURE TO PAY SPREAD-OF-HOURS PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members)

155. Plaintiffs reallege every preceding allegation as if set forth fully herein.

156. Defendants willfully failed to pay Plaintiffs and the Class Members one additional hour's pay at the basic minimum wage rate before allowances for each day that their spread of hours exceeded ten hours, violating Part 146 § 146-1.6 of Title 12 of the Official Compilation of Codes, Rules and Regulations.

157. By their failure to pay Plaintiffs and the Class Members spread-of-hours pay, Defendants have willfully violated the Labor Law Article 19, §§ 650, *et seq*. and the supporting New York State Department of Labor Regulations.

158. Due to Defendants' Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours pay, liquidated damages, reasonable attorneys' fees, costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

SIXTH CAUSE OF ACTION
FAILURE TO PAY TIMELY WAGES
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members)

159. Plaintiffs reallege every preceding allegation as if set forth fully herein.

160. Plaintiffs and the Class Members are "manual workers" within the meaning of Labor Law § 190(4).

161. As manual workers, Defendants were required to pay Plaintiffs and the Class Members "not later than seven days after the end of the week in which the wages are earned." Labor Law § 191(1)(a)(i).

162. With Defendants paying Plaintiffs and the Class Members every 14 days, it did not pay them for the first seven days they worked during each period within seven days at the end of that week, violating Labor Law § 191(1)(a)(i).

163. For violating Labor Law § 191(1)(a)(i), Defendants are liable to Plaintiffs and the Class Members for interest and attorneys' fees and expenses. Labor Law § 198(1-a).

SEVENTH CAUSE OF ACTION
UNLAWFULLY RETAINED GRATUITIES
UNDER THE NEW YORK LABOR LAW
(Brought on Behalf of Plaintiffs and the Class Members)

164. Plaintiffs reallege every preceding allegation as if set forth fully herein.

165. Defendants willfully violated the Labor Law § 196-d by unlawfully retaining a portion of the gratuities, by unlawfully remitting them to the managers, that should be remitted to the Class Members.

166. Due to Defendants' violations of the Labor Law, Plaintiffs and the Class Members are entitled to recover from Defendants their unlawfully retained gratuities, statutory liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

EIGHTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.1 NOTICE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members)

167. Plaintiffs reallege every preceding allegation as if set forth fully herein.

168. Defendants willfully failed to supply Plaintiffs and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under Labor Law § 195.1(a) within 10 business days of their first employment date.

169. Due to Defendants' violations of Labor Law § 195.1, Plaintiffs and the Class Members are entitled to recover from Defendants $50.00 for each workday that the violations

occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. Labor Law § 198(1)-b (2016).

NINTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members)

170. Plaintiffs reallege every preceding allegation as if set forth fully herein.

171. Defendants have willfully failed to supply Plaintiffs and the Class Members with the required accurate wage statements with every payment of wages, violating Labor Law § 195.3.

172. Due to Defendants' violations of Labor Law § 195.3, Plaintiffs and the Class Members are entitled to recover from Defendants $100.00 for each work week that the violations occurred or continue to occur, or a total of $5,000.00, as provided for by Labor Law § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

TENTH CAUSE OF ACTION
RETALIATION UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff Dominguez)

173. Plaintiff Dominguez realleges every preceding allegation as if set forth fully herein.

174. Defendants were collectively an employer within the meaning of Labor Law §§ 190, 196-d, 615(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiff Dominguez.

175. Plaintiff Dominguez complained to Defendants about their unlawful wage practices of not paying him for all hours worked.

176. An employer violates the Labor Law when not paying a non-exempt employee for all hours worked.

177. Defendants terminated Plaintiff Dominguez for his complaints about its wage practices, violating N.Y. Lab. § 215.

178. No legitimate, non-retaliatory reasons exist for the adverse actions Defendants took against Plaintiff Dominguez.

179. Defendants' actions against Plaintiff Dominguez were willful, malicious and wanton.

180. Defendants are liable to Plaintiff Dominguez for his loss of wages, liquidated damages, punitive damages, and attorneys' fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their behalf and on behalf of all Class and Collective Action Members, respectfully request this Court grant the following relief:

a. Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in collective action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members and tolling of the statute of limitations;

b. Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class Members;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

d. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e. An award for unpaid minimum wage under the FLSA and Labor Law;

f. An award for untimely paid wages under the Labor Law;

g. An award for unpaid spread-of-hours pay under the Labor Law;

h. An award for failing to provide the Labor. Law § 195.1 Notice;

i. An award for failing to provide the Labor Law § 195.3 Wage Statements;

j. An award for unlawfully retained gratuities under the FLSA;

k. An award of liquidated damages as a result of Defendants' Labor Law violations;

l. An award of liquidated damages as a result of Defendants' willful FLSA violations;

m. Equitably tolling the statute of limitations under the FLSA;

n. An award of pre-judgment and post-judgment interest;

o. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

p. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
December 1, 2025

LIPSKY LOWE LLP

s/ Douglas B. Lipsky

Douglas B. Lipsky
Frank J. Tantone
420 Lexington Avenue, Suite 1830
New York, New York 10170
212.392.4772
doug@lipskylowe.com
frank@lipskylowe.com
*Attorneys for Plaintiffs*
*And all other persons similarly situated*